In re Robert KAUFMAN, Debtor.

**HARLEYSVILLE NATIONAL BANK AND TRUST COMPANY, Plaintiff,**

v.

**Robert KAUFMAN**

**and**

**James J. O'Connell, Trustee, Defendant.**

**Bankruptcy No. 81–03864G.**
**Adv. No. 82–0373G.**

United States Bankruptcy Court,
E. D. Pennsylvania.

Nov. 9, 1982.

Robert H. Levin, Richelle D. Hittinger, Adelman, Lavine, Krasny, Gold & Levin, Philadelphia, Pa., for plaintiff, Harleysville National Bank and Trust Co.

George Willner, King of Prussia, Pa., for debtor/defendant, Robert Kaufman.

James J. O'Connell, Philadelphia, Pa., trustee.

OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue before us is whether we should grant relief from the automatic stay imposed by section 362(a) of the Bankruptcy Code ("the Code") to permit the mortgagee to foreclose on the debtor's two (2) residences. We conclude that the mortgagee is entitled to such relief because we find that the debtor lacks equity in the properties in question and because the properties are not necessary for an effective reorganization.

The facts of the instant case are as follows: [1] On October 22, 1980, Robert Kaufman ("the debtor") executed a mortgage on his residence located at 100 Wood Spring Road, Gwynedd Valley, Pennsylvania to the Harleysville National Bank and Trust Com-

---

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

pany ("the mortgagee"). On the same day, the mortgagee loaned the debtor $36,000.00 which sum was secured by a judgment lien against the aforesaid Wood Spring Road property and another residence owned by the debtor and his wife located at 1924 Burgundy Way, Hatfield, Pennsylvania.

As of April 22, 1982, the amount of principal, interest and late charges due to the mortgagee on the mortgage for the Wood Spring Road residence was $132,549.20 and no payments have been made by the debtor on this mortgage since January 28, 1982. As of April 22, 1982, the amount of principal and interest owing by the debtor on the $36,000.00 loan was $43,132.93 and the last payment on the $36,000.00 loan was made on February 26, 1981.

On September 21, 1981, the debtor filed a petition for an adjustment of his debts under chapter 13 of the Code and on February 19, 1982, the mortgagee filed the instant complaint for relief from the automatic stay asserting that: (1) its interests in the properties are not adequately protected; and (2) the debtor lacks equity in the properties and the properties are not necessary for an effective reorganization.

Section 362(d) provides the conditions to be met in order for a party in interest to be entitled to relief from the automatic stay provisions of that section:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
>> (2) with respect to a stay of an act against property, if—
>> (A) the debtor does not have an equity in such property; and
>> (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d).

Section 362(g) allocates the burden of proof in a complaint for relief from the stay and provides:

> (g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—
>> (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
>> (2) the party opposing such relief has the burden of proof on all other issues.

11 U.S.C. § 362(g).

In the instant case, there is no possibility of a reorganization since we denied confirmation of the debtor's plan without leave to further amend on July 14, 1982. On that same day, we ordered that the debtor's case be converted to a case under chapter 7 of the Code.

■ As to whether the debtor has equity in the properties in question, we note that all encumbrances against the subject properties are to be considered when determining whether an equity cushion exists in those properties. *In re Mikole Developers, Inc.,* 14 B.R. 524 (Bkrtcy.E.D.Pa.1981). In addition, the costs of foreclosure and sale, including brokerage, escrow and title costs, are also taken into consideration in determining whether there is any equity in the mortgaged premises. *In re Pitts,* 2 B.R. 476 (Bkrtcy.C.D.Ca.1979).

The debtor testified that he considered the fair market values of the Wood Spring Road and Burgundy Way properties to be $224,800.00 and $78,700.00 respectively (N.T. 5/14/82 at 20, 21). The mortgagee's appraiser, on the other hand, testified that the fair market value of the Burgundy Way property was $70,000.00 (N.T. 4/22/82 at 71) while the market value of the Wood Spring Road premises was $195,000.00 (N.T. 4/22/82 at 101). Although we have permitted the debtor to testify as to what he believes the value of his property to be, we have also held that such testimony, standing alone, may not be enough to establish that there is an equity cushion sufficient to adequately protect the mortgagee. *In re Roane,* 8 B.R. 997, 1000 (Bkrtcy.E.D.Pa. 1981), *aff'd* 14 B.R. 542 (D.C.E.D.Pa.1981). In the case at bench, we accept the mortga-

gee's appraisals as being more reliable in light of the fact that the qualifications of the mortgagee's appraiser were stipulated to by the debtor (N.T. 4/22/82 at 54) while the debtor himself testified that he is not an appraiser, a licensed real estate salesman or involved in the building construction industry (N.T. 5/14/82 at 31).

As to the Burgundy Way property, we conclude that the debtor has no equity therein. Both parties agree that there is a first mortgage on the Burgundy Way property held by First Family Federal Savings and Loan ("First Federal"), as of the date of the instant trial, in the amount of $45,-151.64 (N.T. 4/22/82 at 116). In addition, the debtor testified that he has not made a payment on the aforesaid mortgage to First Federal since April 15, 1982 (N.T. 4/22/82 at 115). The property in question is further encumbered by the principal and interest owing on the mortgagee's $36,000.00 loan to the debtor [2] which amount, as of the date of trial, had accrued to $43,132.93 (N.T. 4/22/82 at 21). Consequently, a consideration of just the two aforementioned encumbrances clearly indicates that the debtor has no equity whatsoever in the Burgundy Way property. This determination, it should be pointed out, is made independently of the fact that interest continues to accrue on the $36,000.00 loan at the per diem rate of $15.78 and that the aforesaid loan was to be repaid in full by April of 1981 (N.T. 4/22/82 at 21).

■ As to the Wood Spring Road property, the mortgagee produced testimony at trial that, as of the date of trial, the principal, interest and late charges due and owing on the Wood Spring Road mortgage amounted to $132,549.20 (N.T. 4/22/82 at 13). In addition, the Montgomery County Tax Claim Bureau has a $2,735.84 lien against the Wood Spring Road property for unpaid school taxes for 1981 (N.T. 4/22/82 at 33). Further, the estimate of the costs for foreclosure and sale is $15,700.00. As mentioned previously, the debtor has not made a payment on the mortgage since January 28, 1982. Moreover, we conclude that the $18,284.57 [3] unsatisfied against the Burgundy Way property should be carried over and included in the equity computation for the Wood Spring Road property. Consequently, the debtor has, based on the above-mentioned figures, at best, a minimum equity in the Wood Spring Road property of $25,730.39.[4] However, we conclude that this equity is inadequate and, under the facts of this case, really no equity at all in that: (1) the debtor has not made the regular monthly payment of $1,270.59 since January 28, 1982; (2) the 1982 real estate taxes for Wood Spring Road were, as of April 22, 1982, $688.44 (N.T. 4/22/82 at 36); (3) interest is accruing on the Wood Spring Road mortgage at the per diem rate of $39.66; and (4) we have not, in calculating the equity cushion, taken into account the $11,943.24 [5] claimed by the mortgagee for attorney's fees. Consequently, since the debtor lacks equity in the properties in question and since the subject properties are not necessary to an effective reorganization, we conclude that the mortgagee is

---

2. This is so because this loan is secured by a judgment lien against both of the debtor's residences.

3.

| | | |
|---|---:|---|
| $ | 70,000.00 | (fair market value of Burgundy Way property) |
| | −45,151.64 | (First Federal mortgage) |
| | −43,132.93 | (mortgagee's judgment lien) |
| $ | −18,284.57 | |

4.

| | | |
|---|---:|---|
| $ | 195,000.00 | (fair market value of Wood Spring Road property) |
| | −132,549.20 | (mortgagee's mortgage) |
| | − 15,700.00 | (costs of foreclosure and sale) |
| | − 2,735.84 | (tax lien) |
| | − 18,284.57 | (carryover lien from Burgundy Way property supra n.2) |
| $ | 25,730.39 | (Equity, without deducting monthly payments, real estate taxes, interest or attorneys' fees) |

5. See Exh. "A" to mortgagee's findings of fact and conclusions of law and notes of testimony, 5/14/82 at 36.

 

entitled to relief from the automatic stay pursuant to section 362(d)(2) of the Code.[6]

---

**6.** Section 362(d) permits modification of the automatic stay upon alternative grounds. Relief may be granted under § 362(d)(1) upon a finding that a debtor's interest in property is not adequately protected or under § 362(d)(2) upon a finding that the debtor has no equity in the property and that that property is not necessary to an effective reorganization. *See In re Schramm,* 12 B.R. 608 (Bkrtcy.E.D.Pa.1981); *In re Heath,* 9 B.R. 665 (Bkrtcy.E.D.Pa.1981); *In re High Sky, Inc.* 15 B.R. 332 (Bkrtcy.E.D.Pa. 1981).